Entered: March 28th, 2023
Signed: March 28th, 2023



DAVID E. RICE
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ABDARRAHMAN ELTOWEISSY, | ) | Case No. 21-13399-DER |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| PETER COLUSSI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Pro. No. 21-00180 |
| | ) | |
| ABDARRAHMAN ELTOWEISSY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiff, Peter Colussi ("Colussi"), filed this adversary proceeding against the defendant, Abdarrahman Eltoweissy ("Eltoweissy"), seeking to establish that he is the holder of a nondischargeable claim against Eltoweissy. Colussi and Eltoweissy were involved in an altercation on April 4, 2016, at Nobles Bar on South Charles Street in Baltimore City. Colussi

sustained injuries in the altercation. Eltoweissy was subsequently found guilty of the crime of assault in the second degree by the District Court of Maryland for Baltimore City (the "District Court"). On April 2, 2019, Colussi filed a complaint against Eltoweissy in the Circuit Court for Howard County, Maryland (the "Circuit Court"). As confirmed by his counsel at closing argument, Colussi's complaint asserts two counts, one for battery and the other for negligence. The Clerk of the Circuit Court entered a default against Eltoweissy, but the Circuit Court has yet to determine the amount of any damages to be recovered by Colussi.

Eltoweissy filed a voluntary Chapter 7 bankruptcy petition in this Court on May 21, 2021. Thus, Colussi's Circuit Court action was automatically stayed pursuant to 11 U.S.C. § 362(a). Thereafter, Colussi timely filed this adversary proceeding requesting a determination that his claim against Eltoweissy is one for willful and malicious injury that is excepted from discharge under 11 U.S.C. § 523(a)(6). The parties agreed that this Court should first determine dischargeability under § 523(a)(6) and that thereafter they would litigate the extent of Eltoweissy's liability for damages in the Circuit Court if this Court determined that the claim is not dischargeable.

This Court conducted an in-person trial on the merits on June 29 and June 30, 2022. At trial the parties called three witnesses to testify and offered 19 exhibits that were admitted into evidence. Two of the exhibits are electronic video recordings of the altercation that contain no sound recording. Following trial, this Court requested post-trial briefing, which was completed by the parties on August 19, 2022. After due deliberation, this Court is prepared to render a decision in this matter.

For the reasons explained below, this Court finds that (i) Colussi's claim against Eltoweissy under Maryland tort law for battery is excepted from discharge (that is, not dischargeable) under § 523(a)(6), and (ii) his claim against Eltoweissy for negligence is dischargeable.

## JURISDICTION

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Rule 402 of the Local Rules of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I). This Memorandum Opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).[1]

## FINDINGS OF FACT

On April 4, 2016, at 7:50.58 p.m.,[2] Eltoweissy and his then girlfriend Amino Poulos ("Poulos") entered Nobles Bar on South Charles Street in Baltimore, Maryland. It was Opening Day for the baseball season, and the Baltimore Orioles had earlier defeated the Minnesota Twins. Colussi was standing at the bar near the front door talking with the owner of the bar, Nick Marshall ("Marshall"). He was employed as a bartender at Nobles Bar, but was off duty that day. It is undisputed that during the next minute, Eltoweissy and Colussi were involved in an altercation that ended in Colussi hitting his head on the pavement and being knocked unconscious.

The matter the Court must decide is whether Colussi's fall was (a) as Colussi argues, the result of a willful and malicious final push by Eltoweissy with the intent to cause injury, or (b) as Eltoweissy argues, an accidental/incidental backwards stumble by Colussi while Eltoweissy was trying to push his way past to exit the tense situation. After reviewing the videos and considering all testimony and the credibility and demeanor of the witnesses, the Court finds as follows.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

[2] For the purposes of this Opinion all stated times refer to the time stamps on the video exhibits introduced at trial as Defendant's Exhibits 13 & 14.

At the time of the altercation, the front portion of Nobles Bar was crowded. Stanley Waters, Jr. ("Waters") was on duty as a security guard and standing at the open front door. The space near the entrance at the front of the bar where Colussi was standing was narrow and afforded little room for customers entering Nobles Bar to make their way past him into the main part of the bar. Poulos entered first, followed by Eltoweissy. As Poulos passed Colussi at 7:51.03 p.m., he touched her on the shoulder in an apparent attempt to draw her attention. Eltoweissy immediately took exception to Colussi's act. A moment after Colussi's hand broke contact with Poulos, Eltoweissy reached out and grabbed Colussi by the wrist. An exchange of words ensued. Poulos took Eltoweissy by the hand and tried to lead him to the rear of the bar. He resisted. Poulos then stepped behind him, grabbed him by both arms, and pulled Eltoweissy towards her and away from Colussi. Eltoweissy then broke free of her grasp, moved forward into Colussi, and shoved him back several steps towards the front door.

By 7:51.20 p.m., Waters intervened and was attempting to restrain Eltoweissy and to de-escalate the altercation. Despite the effort by Waters to restrain him, Eltoweissy moved toward the front door. Colussi left the bar when Waters intervened and was standing outside on the sidewalk. As he reached the doorway at 7:51.28 p.m., Eltoweissy broke free of the grasp of Waters and burst through the front door.

The sidewalk in front of Nobles Bar is described as 10 feet wide. Colussi was standing on the sidewalk near the front door slightly to Eltoweissy's right as he exited the bar. Eltoweissy did not turn left to head north along Charles Street and away from Colussi. Instead, Eltoweissy chose further confrontation. Eltoweissy charged out of the door toward Colussi. When he reached Colussi, Eltoweissy pushed Colussi backwards at least five full steps toward Charles Street. As they reached the curb at 7:51.30 p.m., Eltoweissy pushed Colussi forcefully off the curb and onto

the pavement. Colussi landed flat on his back between two parked cars and was knocked unconscious. As he stumbled past the fallen Colussi, Eltoweissy narrowly avoided being hit by a passing car headed south on Charles Street. As he turned around to look at Colussi, Waters appears to block him from further interaction with the fallen Colussi. At 7:51.36 p.m., Eltoweissy left the scene headed south on Charles Street.

Waters testified that once he saw other people were tending to the injured Colussi, he followed Eltoweissy to get a video of him for the police. Poulos followed Waters. Waters testified that she came from behind him and tried "to knock a camera out of my hand." Poulos was unable to prevent Waters from getting a video recording of Eltoweissy. Waters then stopped his pursuit of Eltoweissy.

Waters testified that when he initially heard shouting, he reacted immediately to try to de-escalate the situation by placing himself between Eltoweissy and Colussi. To be sure, Colussi and Eltoweissy exchanged what were undoubtedly heated words during their confrontation. Although Eltoweissy (a person of color) claimed that racial slurs were directed at him by Colussi (a white person), Waters (also a person of color) testified that he did not hear Colussi make any racial slurs. Waters also stated that he had never heard Colussi utter a racial slur in the time Waters had known him.

Waters tried to de-escalate the confrontation. He testified that Eltoweissy was trying to approach Colussi and that he was trying to hold Eltoweissy inside, not move him out the front door. As Waters put it, "Mr. Eltoweissy was trying to go through me."

Waters describes Eltoweissy as breaking free from his effort to restrain Eltoweissy, charging out the doorway towards Colussi, and pushing Colussi forcefully across the sidewalk and backwards over the curb and down into the street. Waters testified that he ran after Eltoweissy as

he went out the door because he was concerned that he would need to place himself again between Eltoweissy and Colussi. His concern was justified, but events prevented him from doing so again.

The account of events given by Waters in his testimony is corroborated by the video recording exhibits. I find Waters to be a credible witness and believe his testimony.

Eltoweissy testified that he believed Colussi's contact with Poulos was inappropriate. After Colussi touched her shoulder, Poulos turned and said something to Colussi while pointing at him – as if calling out his conduct as out of line. Eltoweissy conceded on cross examination that Poulos did not ask him for assistance. The video recordings make clear that Colussi's act (while inappropriate) did not threaten either Poulos or Eltoweissy with bodily injury.

In his testimony, Eltoweissy indicated that his actions were justified because he "felt threatened." It was no doubt a heated confrontation. There was some pushing and shoving, but no punches were thrown by either Colussi or Eltoweissy. Eltoweissy did not testify that Colussi or any other person made statements threatening him with bodily injury. He would have the Court believe that his feeling was derived from the fact that Colussi was standing outside on the sidewalk, waving his arms, and (according to Eltoweissy) saying angry things. I do not believe his testimony that he could not have simply turned left as he left Nobles Bar and avoided Colussi entirely (and the supposed threat he posed) by heading north on the sidewalk along Charles Street.

Eltoweissy testified that he had no intention of hurting Colussi and did not push Colussi off the curb—but rather—that while pushing him forward to move him out of Eltoweissy's path, Colussi stumbled backward off the curb and fell. I do not believe this testimony based on the testimony of Waters and my observation of the video exhibits. There is no mistaking that a last hard push off the curb occurred. In addition, the videos make clear that Eltoweissy was pushing Colussi toward the opening between two cars parked at the curb. The force used by Eltoweissy

was far beyond what would have been needed to merely brush past Colussi and head south on the sidewalk.  Waters described the push by Eltoweissy as an "extremely hard" one.  Eltoweissy was not merely acting to clear a path to leave Nobles Bar.  Colussi's fall was not an accidental one occasioned by a brush back as Eltoweissy passed by him.  Thus, I find that Eltoweissy intended to push Colussi off the curb, into the street, and injure him.  Eltoweissy did so, not because he was threatened, yelled at, or called offensive names, but because he was angry that Colussi had inappropriately touched Poulos.

On the witness stand, Eltoweissy expressed what this Court accepts as sincere regret over the extent of Colussi's injuries.  That regret does not alleviate, however, the legal consequences of what this Court finds was Eltoweissy's intentional injury of Colussi.

On April 6, 2016, an arrest warrant was issued against Eltoweissy commencing the criminal matter in the District Court.[3]  On August 12, 2016, Eltoweissy plead "NGASF" (that is, Not Guilty Agreed Statement of Facts), and was found guilty of second-degree assault (the "Criminal Conviction").[4]  A transcript of the agreed statement of facts (the "Agreed Statement of Facts") was introduced into evidence at trial.[5]  The Agreed Statement of Facts contained no mention of any racial slurs being directed toward Eltoweissy by Colussi.  This Court is not able to determine what legal or tactical reasons, if any, Eltoweissy or his District Court counsel might have had for not referring to such slurs in the Agreed Statement of Facts.  Accordingly, I give no weight to the fact that no reference is made to them.  I find from the other evidence before this Court, however, that Colussi did not make racial slurs during the altercation.

---

[3] *State v. Eltoweissy*, Case No. 0B02044252.  Plaintiff's Exhibit 3.
[4] Plaintiff's Exhibit 4.
[5] Plaintiff's Exhibit 6.

Colussi, Eltoweissy, and Waters testified at trial.  Marshall and Poulos were not called as witnesses.  After consideration of all the circumstances, I find no reason to and do not draw any inference against (a) Colussi that testimony by Marshall if called by Colussi would have been adverse to him, or (b) Eltoweissy that testimony by Poulos if called by Eltoweissy would have been adverse to him.

## **CONCLUSIONS OF LAW**

The exceptions to discharge specified by Congress in § 523 of the Bankruptcy Code are to be construed narrowly.  As the Fourth Circuit has repeatedly made clear, "[w]hen considering the applicability of an exception to discharge, [a court must] construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'"  *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007) (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)).  The Supreme Court has long cautioned against broad constructions of exceptions to discharge because they "would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'"  *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).  *See also*, *Bullock v. BankChampaign*, 569 U.S. 267, 275 (2013).

Conversely, this court must be "equally concerned with ensuring that [wrongdoers] are not allowed to hide behind the skirts of the Bankruptcy Code."  *Biondo*, 180 F.3d at 130.  As the Supreme Court has indicated, while the Bankruptcy Code provides a debtor with "'"a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,"' the Bankruptcy Code also "limits that opportunity to the 'honest but unfortunate debtor.'"  *Brown v. Felsen*, 442 U.S. 127, 128 (1979) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

The burden of proof is on the creditor to establish by a preponderance of the evidence that a debt is not dischargeable. *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)); *Colombo Bank v. Sharp*, 477 B.R. 613, 619 (D. Md. 2008). Although the allowance of a claim is generally governed by state law, "the issue of non-dischargeability is a matter of federal law governed by the Bankruptcy Code." *Reinheimer v. Ortman (In re Reinheimer)*, 509 B.R. 12, 18 (Bankr. D. Md. 2014).

Under § 523(a)(6) of the Bankruptcy Code, "any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from the debtor's discharge. 11 U.S.C. § 523(a)(6). As the Supreme Court said in *Kawaauhau v. Geiger*, relief under § 523(a)(6) requires a finding of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." 523 U.S. at 61 (emphasis in original). In that decision, the Supreme Court held that "debts arising from recklessly or negligently inflicting injuries do not fall within the compass of § 523(a)(6)." *Id*. at 64. Thus, Colussi's claim for negligence is not covered by § 523(a)(6) and is dischargeable. Colussi's claim for battery, however, is a different matter.

It is well settled in the Fourth Circuit that a determination of nondischargeability for willful and malicious injury requires a finding that the debtor acted with the intent to injure the creditor. *See*, *TKC Aerospace Inc. v. Muhs (In re Muhs)*, 923 F.3d 377, 385-87 (4th Cir. 2019); *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006).

Shortly after the Supreme Court decided *Kawaauhau v. Geiger*, the Fifth Circuit applied that decision and held that § 523(a)(6) applies when the debtor acted with "objective substantial certainty or subjective motive" to cause injury. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998). The Fifth Circuit standard was seemingly adopted by the Fourth Circuit in its unreported opinion in *Parsons v. Parks (In re Parks)*, 91 Fed. Appx. 817 (4th Cir. 2003). It

is not clear once *Kawaauhau v. Geiger* was decided that a court applying § 523(a)(6) need look beyond the question of whether the debtor acted with intent to injure the creditor. In any event, if the *Miller* standard is applicable here, both prongs are satisfied. Eltoweissy used such force in pushing Colussi across the sidewalk, over the curb, and down into the street that by any objective standard injury to Colussi was a substantial certainty. Moreover, this Court found that Eltoweissy was motivated to injure Colussi because he was angry that Colussi had inappropriately touched Poulos.

Eltoweissy asserts that he acted in self-defense and that Colussi's claim is thus barred. The Court disagrees. Eltoweissy directs this Court to the opinion by the Supreme Court of Maryland[6] in *State v. Smullen*, 844 A.2d 429 (Md. 2004), for the Maryland law on the applicable elements of perfect self-defense and imperfect self-defense. The Court assumes (and the parties have not suggested otherwise) that the law of self-defense as explained in *Smullen* is equally applicable in Maryland tort law. *See*, *Baltimore Transit Co. v. Faulkner*, 20 A.2d 485 (Md. 1941).

This Court need not engage in a lengthy analysis of the various elements of either perfect self-defense or imperfect self-defense. Under either defense, a court must determine whether a defendant had an honest belief in fact that he was "in *apparent* imminent or immediate danger of death or serious bodily harm." *Smullen*, 844 A.2d at 440 (emphasis in original). One difference between the two defenses lies in whether the defendant's belief is an objectively reasonable one. If it is, then perfect self-defense may apply. If it is not, then imperfect self-defense may apply. Here, this Court considered the evidence and found that Eltoweissy attacked and injured Colussi on the sidewalk outside Nobles Bar not because Eltoweissy believed he was in apparent imminent

---

[6] Prior to December 14, 2022, the Supreme Court of Maryland was known as the Court of Appeals of Maryland.

or immediate danger of death or serious bodily harm from Colussi, but because he was angry that Colussi had inappropriately touched Poulos on the shoulder.

Lastly, Colussi urged this Court to find that Eltoweissy is barred by either collateral or judicial estoppel from attacking or explaining either the Criminal Conviction or the Agreed Statement of Facts. The Court does not need to make such a determination since it finds based on the evidence presented at trial that regardless of any explanation of either by Eltoweissy, his liability for battery falls within the exception to discharge enumerated in § 523(a)(6).

In sum, Colussi has met his burden. Based upon a preponderance of the evidence, this Court found that Eltoweissy acted with the intention to injure Colussi.

## CONCLUSION

This Memorandum Opinion determines that Eltoweissy acted with intent to injure Colussi and that Colussi's battery claim against Eltoweissy for his resulting injuries thus is not dischargeable under 11 U.S.C. § 523(a)(6). Consistent with the agreement of the parties, this Court otherwise expresses no opinion on the nature and extent of Colussi's injuries or the amount of any damages to be awarded by the Circuit Court.

An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

cc:   All Parties
      All Counsel

**-- End of Memorandum Opinion --**